JOURNAL ENTRY AND OPINION
{¶ 1} Defendants-appellants[1] appeal from various evidentiary rulings made by the trial court; from the judgment entered upon the jury's verdict; and from the denial of defendants' post-trial motions. For the reasons that follow, we must affirm.
 {¶ 2} Kafantaris is the sole shareholder of MDK, which owns several Denny's franchises in Northeast Ohio. Plaintiff first interviewed with Kafantaris for employment in July 1998. Kafantaris offered plaintiff an assistant manager position, which plaintiff declined. In October 1998, plaintiff requested another interview with Kafantaris, who again offered plaintiff the assistant manager position. Plaintiff accepted and began his employment with MDK in November 1998.
 {¶ 3} Defendants made certain accommodations for plaintiff, which included not scheduling plaintiff for work on Sundays at his request. None of MDK's other managers had this type of schedule. In addition, plaintiff occasionally stayed at a hotel due to the distance of his home from work and defendant paid some, if not all, of that expense. There was no evidence to suggest that MDK did this for any other employee.
 {¶ 4} Throughout the extensive record, the witnesses consistently testified that plaintiff was a "good manager." The dispute arises over the reason behind his termination. Defendants maintain that plaintiff repeatedly engaged in sexual harassment of young female servers. Plaintiff maintains that defendants concocted false allegations of sexual harassment to conceal the racial animus behind his termination. We have derived the following facts from the record:
 {¶ 5} In early 1999, two female servers reported that plaintiff had interacted with them in inappropriate ways. One reported that plaintiff, among other things, stuck his tongue down her throat. The other server maintained that plaintiff made certain comments that made her feel uncomfortable and that he touched her inappropriately. Both servers were under the age of 18 at the time these events allegedly occurred. Both of these witnesses testified at trial consistent with the complaints they filed with MDK.
 {¶ 6} MDK investigated the complaints. While plaintiff denied the specific allegations made by the complainants, he acknowledged touching them on the shoulder to reassure them during training. For that, plaintiff wrote them a letter of apology.[2] However, neither of the servers complained about plaintiff touching their shoulders. In the letter of apology, plaintiff wrote that he "ha[d] not had these problems in [his] past record." (Pltfs. Ex. 7). At trial, plaintiff clarified that he meant in his past record with Denny's as he admitted to having been accused of sexual harassment in previous employment.
 {¶ 7} Following the investigation, MDK transferred plaintiff to a different location with the understanding that he would be terminated in the event of any further complaints.
 {¶ 8} Plaintiff presented the testimony of certain of his former co-workers at Denny's through videotape. Defendants objected to the presentation of video in lieu of live testimony. The court overruled that objection. One of these witnesses testified that she resigned in February 1999 due to Kafantaris' alleged racial prejudice and the fact that she heard him use the term "nigger." This witness testified that defendants were "trying to falsely accuse [plaintiff] of sexual harassment." She stated that her manager Mary Lynn told her that two girls were going to "falsely write a sexual harassment against [plaintiff]." And, she claimed when she complained about this to another manager, Frank, he told her that Kafantaris told him "[w]hatever it takes to get rid of the nigger" referring to plaintiff. Both of the referenced managers and Kafantaris denied the above claims made by this witness.
 {¶ 9} Another female server testified that in June or July 1999, Kafantaris asked her whether plaintiff had sexually harassed her. When she said no, Kafantaris offered her $250.00 "to fill out a statement." She declined the offer.
 {¶ 10} Another witness for plaintiff testified that in September 1999 he overheard Kafantaris allegedly state at a meeting in the restaurant that he "did not need any more nigger managers working in a restaurant." Defendants presented evidence indicating that the alleged meeting and the alleged statement never occurred.
 {¶ 11} Plaintiff testified that he had terminated a subordinate employee on two different occasions for calling him a "nigger." Each time, that employee was re-hired. Plaintiff claimed defendants re-hired that employee while defendants state that plaintiff did. Defendants presented evidence to suggest that plaintiff never communicated to them that the employee made racial slurs. Defendants maintained that plaintiff only cited insubordination as the reason for termination. Plaintiff disagreed.
 {¶ 12} In October 1999, someone slashed the tires on plaintiff's car in the restaurant parking lot. At the time, plaintiff suspected an irate customer. However, a former Denny's employee, Carlton Starkey, subsequently admitted that he had committed that crime. The parties were unable to locate Starkey at the time of trial. The jury was presented with Starkey's videotaped deposition testimony.
 {¶ 13} Starkey claimed that he went to Denny's looking for his job back and spoke with a manager named Gary. Gary allegedly told him that Kafantaris was trying to get rid of an employee who was giving him "trouble." That employee was plaintiff. Gary allegedly told Starkey that Kafantaris gave him $500 to find someone to cut plaintiff's tires. Although Starkey knew plaintiff, he accepted the offer and cut plaintiff's tires with his pocket knife. Gary then allegedly gave him the $500 and a card with Kafantaris' number on it.
 {¶ 14} Gary testified that he quit his job at Denny's because he was angry with how he was being treated. Gary opened his own restaurant. At trial, Gary said that Starkey was lying and denied Starkey's accusations against the defendants entirely.
 {¶ 15} On October 28, 1999, a third female server, also under the age of 18, complained to MDK management that plaintiff had sexually harassed her at work. MDK's Human Resource Manager investigated the complaint. The HR Manager had observed plaintiff and the server on the night in question and it was his opinion that she was telling the truth. The server's trial testimony was consistent with her statement to MDK. Plaintiff denied these allegations of sexual harassment as well.
 {¶ 16} During MDK's investigation of the October complaint, plaintiff was placed on leave. Ultimately, MDK learned that plaintiff misrepresented the extent of his education and experience on his resume. MDK also learned that plaintiff had allegedly sexually harassed three other of its servers: Leah Vandercook, Michelle Robb, and Kara Myers. The parties dispute whether defendants learned of these allegations before or after plaintiff was terminated. Regardless, defendants' witnesses unequivocally testified that plaintiff's termination was based solely upon the three initial complaints. The court prohibited the defendants from introducing evidence of the additional claims made by Vandercook, Robb, and Myers and defendants did not proffer their testimony at trial.
 {¶ 17} Plaintiff introduced testimony that defendants paid the three female servers to falsely accuse plaintiff of sexually harassing them. All of the women and defendants denied this.
 {¶ 18} The court granted plaintiff's motion in limine to preclude the introduction of evidence of other charges of sexual harassment lodged against the plaintiff by coworkers during his employment elsewhere. Again, there was no proffer of this evidence at trial. Defendants further objected to the court's ruling to exclude the testimony of two African American employees of MDK who had no personal knowledge of the facts surrounding plaintiff's claims. The record, however, includes evidence that defendants employed other African Americans besides plaintiff, including MDK's Haitian HR Manager, Wes Petit-Frere. Petit-Frere testified at the trial.
 {¶ 19} Defendants moved for a directed verdict at the close of both plaintiff's and defendants' case. The court denied both motions. The jury returned a verdict in favor of plaintiff awarding him $100,000 in compensatory damages and $500,000 in punitive damages plus attorney fees, which the parties subsequently stipulated to in the amount of $90,000. The court further denied defendants' motion for judgment notwithstanding the verdict, for a new trial, and for remittitur.
 {¶ 20} Defendants have asserted five assignments of error, which we will address together where appropriate for discussion.
 {¶ 21} "I. The trial court erred as a matter of law when it excluded the testimony of three critical witnesses, all of whom appellee sexually harassed while they were employed by MDK, which evidence was directly relevant to supporting appellants' legitimate business reason for appellee's termination as well as rebutting appellee's claim that his interaction with his co-employees was innocent.
 {¶ 22} "II. The trial court erred when it excluded the testimony of three other critical witnesses who would have testified about appellee's sexual harassment both before and after his employment with appellants since such evidence was directly relevant to appellee's claim that his interactions with co-employees was innocent."
 {¶ 23} Both of these assignments challenge the propriety of the trial court's decision to exclude evidence. A trial court's decision to exclude evidence is not grounds for reversal unless the record clearly demonstrates that the trial court abused its discretion and that the complaining party has suffered a material prejudice. Columbus v. Taylor
(1988), 39 Ohio St.3d 162, 164. An abuse of discretion connotes more than an error of law or judgment, it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. Tracy v. Merrell-DowPharmaceuticals, Inc. (1991), 58 Ohio St.3d 147, 152.
 {¶ 24} Plaintiff maintains that defendants failed to proffer the substance of the testimony in the record as required by Evid.R. 103(A)(2), thus barring a review on the merits of these assigned errors.
 {¶ 25} A motion in limine is a preliminary ruling. Pena v.Northeast Ohio Emergency Affiliates, Inc.
(1995), 108 Ohio App.3d 96, 108; Defiance v. Kretz (1991),60 Ohio St.3d 1, 4. Thus, the trial court is free to change its ruling on the disputed evidence in its actual context at trial. Id. Accordingly, a proper objection must be raised at trial to preserve any claimed error.Collins v. Storer Communications, Inc. (1989), 65 Ohio App.3d 443; Statev. Grubb (1986), 28 Ohio St.3d 199. "A proponent who has been temporarily restricted from introducing evidence by virtue of a motion in limine, must seek the introduction of the evidence by proffer or otherwise at trial in order to enable the court to make a final determination as to its admissibility and to preserve any objection on the record for purposes of appeal." Id.
 {¶ 26} Here, defendants did not renew their objection during trial nor did they attempt to introduce or proffer the evidence they sought to introduce. Defendants argue that a proffer was unnecessary because they contend that the substance of the excluded evidence is apparent from the record. Evid.R. 103(A). Defendants rely on this Court's decisions inHissa v. Hissa, Cuyahoga App. Nos. 79994 and 79996, 2002-Ohio-6313 andSchoonover v. Cleveland Metro. Gen. Hosp. (July 16, 1987), Cuyahoga App. No. 52329.
 {¶ 27} Hissa involved the trial court's exclusion of an expert report in a divorce proceeding. The record in that case included a version of the expert report that was filed with the trial court as well as a version submitted for trial that was included in the record as an exhibit. Thus, this court had the excluded evidence which enabled it to make an independent review.
 {¶ 28} In Schoonover, this Court felt "sufficiently apprised of the nature of the evidence to consider the objection" notwithstanding the absence of a proffer. During Shoonover's case-in-chief, she sought to introduce a written prescription to challenge the defendant doctor's contention on cross-examination that he had not prescribed medication to the patient after a certain date. The evidence was excluded because it was not properly authenticated. On rebuttal, plaintiff again attempted to introduce similar evidence which the court prohibited. Although this Court opted to address the merits of the exclusion, it held that the court did not abuse its discretion and any error in so ruling was harmless error "at best" since the evidence involved the collateral issue of the credibility of the defendant.
 {¶ 29} The evidence under our consideration here is quite different from that examined in either Hissa or Schoonover. Defendants complain about the exclusion of a myriad of witnesses. Yet, defendants failed to reassert their objections at the appropriate time during the trial and failed to proffer the testimony of any of the identified witnesses at trial. Even if we were to look beyond the trial transcript, the record is similarly devoid of the substance of the excluded evidence. With the exception of the testimony of Vandercook, we are unable to sufficiently ascertain the substance of the excluded evidence to allow any meaningful review on the merits of the ruling. Plaintiff filed Ms. Vandercook's videotaped deposition on December 4, 2001. Otherwise, defendants rely upon the affidavit and deposition of MDK's HR manager purporting to establish what the remainder of the witnesses would have said at trial.
 {¶ 30} In both Hissa and Schoonover the court was able to garner the substance of the actual evidence from the record and did not rely on a hearsay summary of the evidence from a representative of the party seeking to introduce it. We do not feel the excluded evidence is sufficiently discernable from the record so as to overcome the proffer required by Evid.R. 103(A).
 {¶ 31} That leaves the sole videotaped deposition of Vandercook that was filed on December 4, 2001 by plaintiff. Vandercook alleged that plaintiff repeatedly propositioned her at work to have sex with him in exchange for money; ultimately offering her $1,000. Vandercook worked at the Brunswick Denny's between March and June 1999, when she was terminated by plaintiff. She never filed any complaints against plaintiff during her employment. Over a year after her termination, she learned of plaintiff's lawsuit against defendants through a newspaper article in 2000, which prompted her to make a written statement about plaintiff's earlier sexual propositions to her.
 {¶ 32} The trial court granted plaintiff's motion in limine to exclude the testimony of Vandercook, among other witnesses, because it involved allegations which defendants did not cite as reasons for terminating plaintiff. However, the parties agreed that such evidence could become admissible as the trial progressed for reasons such as plaintiff "opening the door" on those issues. (Tr. 24). Although defendants objected to the preliminary ruling, defendants did not seek to introduce this evidence by proffer or otherwise at trial as required by law to allow the trial court to make a final determination as to its admissibility and to preserve this issue for appeal. Ibid.
 {¶ 33} We do note defendants' heavy reliance on Tasin v. SifcoIndustries, Inc. (Nov. 10, 1988), Cuyahoga App. No. 54498. In Tasin, the court reviewed the admission of evidence under the abuse of discretion standard. Here, we would be required to review the exclusion of such evidence under the same standard. Tasin does not stand for the proposition that the exclusion of this type of evidence is necessarily an abuse of discretion as a matter of law but only that its admission is not. Nonetheless, it is improvident for us to reach the merits of the exclusion since these errors are overruled on the previously stated grounds.
 {¶ 34} Assignments of Error I and II are overruled.
 {¶ 35} "III. The trial court erred as a matter of law when it denied appellants' motion for directed verdict and motion for jnov since appellee had failed to prove that appellants had a discriminatory animus toward him and that the reason for his termination was mere pretext for discrimination."
 {¶ 36} A directed verdict should be granted if the movant is entitled to judgment as a matter of law when the evidence is construed most strongly in favor of the non-movant. Sanek v. Duracote Corp.
(1989), 43 Ohio St.3d 169, 172. A jury should consider a plaintiff's claim only if the probative evidence, if believed, would permit reasonable minds to come to different conclusions as to the essential issue of the case. Id. If substantial evidence exists in support of plaintiff's claim, the motion must be overruled. Pariseau v. WedgeProducts, Inc. (1988), 36 Ohio St.3d 124, 127.
 {¶ 37} In deciding whether to grant a motion for a directed verdict, the trial court does not weigh evidence or consider the credibility of the witnesses, but rather, reviews and considers the sufficiency of the evidence as a matter of law. Ruta v. Breckenridge-RemyCo. (1982), 69 Ohio St.2d 66; O'Day v. Webb (1972), 29 Ohio St.2d 215. Because a motion for a directed verdict presents a question of law, an appellate court must conduct a de novo review of the trial court's judgment. Howell v. Dayton Power Light Co. (1995), 102 Ohio App.3d 6,13.
 {¶ 38} The test to be applied by the trial court in ruling on a motion for judgment notwithstanding the verdict is the same test to be applied on a motion for a directed verdict.Posin v. A.B.C. Motor CourtHotel (1976), 45 Ohio St.2d 271;Cunningham v. Hildebrand (2001),142 Ohio App.3d 218, 224.
 {¶ 39} Plaintiff bears the initial burden of establishing a prima facie case of racial discrimination by establishing the following: (1) the plaintiff belongs to a racial minority; (2) was discharged; (3) was qualified for the position; and (4) was replaced by, or the discharge permitted the retention of, a person who was not a member of the protected class. See Plumbers Steamfitters Joint Apprenticeship Commt. v.Ohio Civ. Rights Comm. (1981), 66 Ohio St.2d 192, 197; see, also, TexasDept. of Community Affairs v. Burdine (1981), 450 U.S. 248, 252-53, citing McDonnell Douglas Corp. v. Green (1973), 411 U.S. 792, 802.
 {¶ 40} The burden then shifts to the defendant employer to articulate some legitimate, nondiscriminatory reason for the employee's discharge. Id. Upon this showing, the burden shifts back to the plaintiff to rebut the articulated reason for discharge by demonstrating that it was a mere pretext for impermissible race discrimination by a preponderance of the evidence. Id.
 {¶ 41} Defendants argue that plaintiff's discrimination claim must fail because it is based only upon "stray remarks." We are bound to view the evidence in a light most favorable to the plaintiff. As set forth previously herein, at least two witnesses testified that they heard Kafantaris refer to plaintiff as a "nigger" and that he would do whatever it took to get rid of him. In addition, another witness reported hearing Kafantaris say he did not need any more nigger managers. A third witness testified that he was paid indirectly by Kafantaris to slash plaintiff's tires. Those are not stray remarks but were identified as specific statements about plaintiff and were probative of defendants' attitude towards plaintiff.
 {¶ 42} Kafantaris denied these allegations and defendants did, in fact, present a legitimate, non-discriminatory reason for plaintiff's termination; that being the repeated complaints that plaintiff sexual harassed young female servers. Plaintiff rebutted this reason by offering evidence that defendant paid these women to fabricate the allegations against plaintiff.
 {¶ 43} Defendants question why Kafantaris would twice offer plaintiff a job only to fire him in an elaborate scheme of racial discrimination. That was, however, a question facing the jury. We are not at liberty to weigh the evidence. The record contains conflicting evidence on nearly every material issue as we have summarized in some detail above. It matters not what version of the evidence we would have believed but only that the record contains some evidence that, if believed, would support plaintiff's claim. The record does contain such evidence and for that reason we find that the trial court did not err in overruling defendants' motions for directed verdict and for judgment notwithstanding the verdict.
 {¶ 44} Assignment of Error III is overruled.
 {¶ 45} "IV. The trial court erred as a matter of law when it denied appellants' motion for a new trial, or alternatively for remittitur."
 {¶ 46} The granting of a motion for new trial rests largely in the sound discretion of the trial court. A reviewing court will not disturb the trial court's ruling unless there is an abuse of discretion. Verbonv. Pennese (1982), 7 Ohio App.3d 182, 7 Ohio B. 229.
 {¶ 47} Defendants generally assert that they were entitled to a new trial pursuant to the grounds contained in Civ.R. 59(A)(1), (4), (5), (6) and (7).
 {¶ 48} Defendants first claim that the trial court's exclusion of various witnesses was an abuse of discretion which denied them a fair trial. Civ.R. 59(A)(1). Consistent with our disposition of the previous assignment of error concerning the trial court's exclusion of this evidence, we find that the trial court did not err in denying defendants' motion for new trial on this ground.
 {¶ 49} Defendants also believe the jury awarded excessive compensatory and punitive damages entitling them to a new trial under Civ.R. 59(A)(7). The jury awarded plaintiff $100,000 in compensatory damages and $500,000 in punitive damages.
 {¶ 50} Defendants cite to the trial court's observation of the "paucity of the testimony on these elements." Indeed, the record is sparse as to the defendants' debts and assets and overall net worth. Plaintiff did establish, however, that Kafantaris was the sole shareholder of various corporations which owned certain real estate and restaurant franchises. Defendants failed to submit any evidence concerning their financial status until the post-trial proceedings when they submitted an unnotarized sheet of paper detailing some of defendants' alleged debts.
 {¶ 51} Civ.R. 59(A)(4) allows the trial court to grant a new trial in the event of "excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice." This court has recognized that the "[f]actors to be assessed in reviewing the exercise of discretion by the trial court under this provision include the excessive nature of the verdict, consideration by the jury of incompetent evidence, improper argument by counsel, or other improper conduct which can be said to have influenced the jury. Fields v. Dailey (1990),68 Ohio App.3d 33, 39. To support a finding of passion or prejudice, it must be demonstrated that the jury's assessment of damages was so overwhelmingly disproportionate as to shock reasonable sensibilities.Pena v. Northeast Ohio Emergency Affiliates (1995), 108 Ohio App.3d 96. The burden is on the moving party to demonstrate that passion and prejudice played a role in the jury's determination. Knor v. Parking Co.of Am. (1991), 73 Ohio App.3d 177. A reviewing court should be particularly circumspect about attributing passion or prejudice to a jury's determination of damages as that is a matter peculiarly in their province. Kluss v. Alcan Aluminum Corp. (1995), 106 Ohio App.3d 528, 539. After all, passion and prejudice are not proved by the size of the verdict. Id."Santoli v. Marbuery (May 14, 1998), Cuyahoga App. No. 72110.
 {¶ 52} Having thoroughly reviewed the record, we do not find that the trial court abused its discretion in denying the motion for new trial on this ground. There is no contention that the jury heard incompetent evidence or that it was influenced by any improper conduct. The jury's assessment of damages was not so overwhelmingly disproportionate to the evidence that it would shock reasonable sensibilities. Similarly, it does not appear to have been the result of passion or prejudice. We do not find that the trial court abused its discretion in rejecting defendants' position under Civ.R. 59(A)(4).
 {¶ 53} When a judgment is not sustained by the weight of the evidence, a new trial may be granted under Civ.R. 59(A)(6). In determining whether a new trial is warranted, the trial court "must weigh the evidence and pass upon the credibility of the witnesses, not in the substantially unlimited sense that such weight and credibility are passed on originally by the jury but in the more restricted sense of whether it appears to the trial court that manifest injustice has been done and that the verdict is against the manifest weight of the evidence." Rohde v.Farmer (1970), 23 Ohio St.2d 82, paragraph three of the syllabus.
 {¶ 54} We, as an appellate court, are to "view the evidence favorably to the trial court's action rather than to the original jury's verdict." Id. at 94. This is because "the trial judge is better situated than a reviewing court to pass on questions of witness credibility and the `surrounding circumstances and atmosphere of the trial.'" Malone v.Courtyard by Marriott L.P. (1996), 74 Ohio St.3d 440, 448, quoting Rohdev. Farmer, 23 Ohio St.2d at 94.
 {¶ 55} As set forth previously herein, the jury's verdict is supported by both competent and credible evidence. While there is a significant amount of totally contradictory evidence in this record, the verdict is not against the manifest weight of the evidence as a whole. The trial court did not abuse its discretion in denying defendants' motion for new trial on this ground.
 {¶ 56} While defendants contend that the judgment was contrary to law under Civ.R. 59(A)(7), defendants failed to submit any substantive argument or law to us in this regard.
 {¶ 57} Lastly, we address the trial court's denial of defendants' alternative motion for remittitur. Defendants essentially argue that the trial court abused its discretion by not reducing the jury's damages award. "Low compensatory damages and high punitive damages assessed by a jury are not in and of themselves cause to reverse the judgment or to grant a remittitur, since it is the function of the jury to assess the damages and, generally, it is not for the trial or appellate court to substitute its judgment for that of the trier of fact. A large disparity, standing alone, is insufficient to justify a court's interference with the province of the jury." Villella v. Waikem Motors,Inc. (1989), 45 Ohio St.3d 36, 40. "The purpose of punitive damages is not to compensate a plaintiff, but to punish and deter certain conduct."Moskovitz v. Mt. Sinai Med. Ctr. (1994), 69 Ohio St.3d 638,651. Given the nature of the evidence in the record, the trial court did not err in denying defendants' alternative motion for remittitur.
 {¶ 58} Assignment of Error IV is overruled.
 {¶ 59} "V. The trial court erred when in permitted appellee to present to the jury the videotaped discovery depositions of Sheila Davis, Carleton Starkey, and Rachel Petrey without making the requisite demonstration of unavailability pursuant to Evidence Rule 804(A)5."
 {¶ 60} Defendants maintain that the trial court's admission of certain videotaped depositions in lieu of calling live witnesses violated Evid.R. 804(A)(5) absent a showing of unavailability. Plaintiff responds that he did attempt to secure the subject witnesses attendance through subpoenas but was unsuccessful. Nonetheless, plaintiff argues that Civ.R. 32(A)(3)(b), rather than Evid.R. 804, should control the disposition of this error.
 {¶ 61} A trial court has broad discretion in the admission or exclusion of evidence at trial. Ibid. We review such determinations under the abuse of discretion standard. Ibid.
 {¶ 62} Evid.R. 804(A)(5) provides in relevant part as follows:
 {¶ 63} "`Unavailability as a witness' includes any of the following situations in which the declarant:
 {¶ 64} "* * *
 {¶ 65} "(5) is absent from the hearing and the proponent of the declarant's statement has been unable to procure the declarant's attendance * * * by process or other reasonable means."
 {¶ 66} Civ.R. 32 governs the use of depositions in court proceedings and provides in relevant part as follows:
 {¶ 67} "(A) Use of depositions.
 {¶ 68} "Every deposition intended to be presented as evidence must be filed at least one day before the day of trial or hearing unless for good cause shown the court permits a later filing.
 {¶ 69} "At the trial * * * any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any one of the following provisions:
 {¶ 70} "(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: * * * (b) that the witness is beyond the subpoena power of the court in which the action is pending or resides outside of the county in which the action ispending unless it appears that the absence of the witness was procured bythe party offering the deposition * * * or (d) that the party offering the deposition has been unable to procure the attendance of the witness by subpoena * * *." (Emphasis added).
 {¶ 71} Defendant relies upon In re Story (1967), 159 Ohio St. 144;In re Carter (1997), 123 Ohio App.3d 523 and Karst v. Goldberg (1993),88 Ohio App.3d 413. None of these cases involved the admission or use of a person's videotaped deposition testimony in lieu of their live testimony. None of those cases implicate or address the use of deposition testimony at trial or the provisions of Civ.R. 32.
 {¶ 72} Defendants do not contend that plaintiff or his counsel engaged in any wrongdoing to prevent any of these three witnesses from attending or testifying at trial. At the time each deposition was taken, defendants were represented by counsel who was present at the deposition of these witnesses and who engaged in cross-examination of these witnesses. Both Davis and Petrey resided outside Cuyahoga County at the time of trial and the whereabouts of Starkey was unknown. Plaintiff filed both the written and videotaped depositions of Starkey, Petrey, and Davis with the trial court well before the day of trial. And, the record confirms that plaintiff subpoenaed each of these witnesses for trial.
 {¶ 73} The court allowed plaintiff to present the videotaped depositions to the jury during his case-in-chief. However, the court further stated that defendants could call the witnesses live in their case. (R. 100). Defendants did not do so nor is there any reflection in the record that the trial court denied any attempt by defendants to call any of these witnesses.
 {¶ 74} In light of these facts and the provisions of Civ.R. 32, we find that the trial court did not abuse its discretion in permitting plaintiff's use of the Starkey, Petrey and Davis videotaped depositions at trial.
 {¶ 75} Assignment of Error V is overruled.
 {¶ 76} The judgment is affirmed.
Judgment affirmed.
 ANNE L. KILBANE, P.J., and FRANK D. CELEBREZZE, JR., J., concur.
It is ordered that appellee recover of appellants his costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution.
[1] Michael Kafantaris and MDK Food Service, Inc. (collectively "defendants" and "Kafantaris" and "MDK" individually).
[2] During his testimony, plaintiff intimated that defendants coerced him into writing the apology.