[Cite as *Luri v. Republic Servs., Inc.*, 193 Oho App.3d 682, 2011-Ohio-2389.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 94908**

## LURI,

APPELLEE,

v.

## REPUBLIC SERVICES, INC. ET AL.,

APPELLANTS.

**JUDGMENT:**
AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-633043

**BEFORE:** Celebrezze, J., Kilbane, A.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** May 19, 2011

Haber Polk Kabat, L.L.P.,
Shannon J. Polk, and Richard C. Haber;
Tucker Ellis & West, L.L.P.,
Irene C. Keyse-Walker, and Benjamin C. Sasse;
And Pierce Stronczer Law, L.L.C., and
Michelle Pierce Stronczer, for appellee.

Squire, Sanders & Dempsey, L.L.P.,
Stephen P. Anway, and Robin G. Weaver,
for appellants.

FRANK D. CELEBREZZE Jr., Judge:

{¶ 1} Appellants, Republic Services, Inc. ("Republic"), Republic Services of Ohio I, L.L.C. ("Republic Ohio"), Republic Services of Ohio Hauling, L.L.C. ("Ohio Hauling"), James Bowen, and Ronald Krall, appeal from an adverse judgment and the largest retaliatory discharge jury award in Ohio history — over $46 million. We affirm the jury's verdict, but remand for imposition of statutory punitive-damage limits.

{¶ 2} Appellee Ronald Luri was employed as the general manager in charge of the Cleveland division of Ohio Hauling. His direct supervisor, Bowen, was employed by Republic Ohio. Luri also reported to Bowen's supervisor, Krall, who was employed by Republic.

{¶ 3} According to Luri, sometime in November 2006, Bowen approached him with an action plan that called for, among other things, the termination of three employees. Luri testified that Bowen instructed him to fire Frank Pascuzzi, George Fiser, and Louis Darienzo, Luri's three oldest employees. Luri testified that he informed Bowen that Pascuzzi had strong performance evaluations, and terminating him without reason could result in a discrimination lawsuit. He also informed Bowen that Pascuzzi had a medical condition that could result in a disability-discrimination suit. Luri testified that he refused to fire the three individuals.

{¶ 4} Thereafter, Luri's performance evaluations were worse than in previous years, and Bowen instituted "improvements directives" for Luri to complete, including conducting weekly meetings and providing more information to Bowen. Appellants claim that these directives were not accomplished, and as a result, Luri was terminated on April 27, 2007.

{¶ 5} Luri then filed suit on August 17, 2007, alleging claims of retaliatory discharge under R.C. 4112.02(I). After receiving notice of the litigation as a named party, it appears from the evidence presented at trial that Bowen had altered at least one piece of evidence to justify Luri's termination. Luri claims that as many as three pieces of evidence were altered or fabricated and submitted to him during discovery.

**{¶ 6}** Appellants twice moved to bifurcate the trial pursuant to the Ohio Tort Reform Statutory provisions in R.C. 2315 et seq., as well as Civ.R. 42(B). The court denied these motions, and trial commenced on June 24, 2008. This lengthy trial concluded with a jury verdict finding against all defendants and awarding Luri $3.5 million in compensatory damages, jointly and severally against all defendants, and $43,108,599 in punitive damages.[1] Appellants moved for remittitur, a new trial, and for judgment notwithstanding the verdict. These motions were all denied. Luri sought an award for attorney fees and for prejudgment interest on the compensatory damages from the date of his termination. The trial court awarded Luri over $1 million in attorney fees and prejudgment interest on the entire compensatory-damages award.

## Law and Analysis

### Bifurcation

**{¶ 7}** Appellants first argue that the trial court "erred by failing to apply R.C. 2315.21(B)(1), which requires mandatory bifurcation." Appellants assert that bifurcation is mandatory upon motion.[2] This court disagrees.

---

[1] The jury awarded punitive damages as follows: $21,500,000 against Republic, $10,750,000 against Republic Ohio, $10,750,000 against Ohio Hauling, $83,394 against Krall, and $25,205 against Bowen.

[2] R.C. 2315.21(B)(1) states, "In a tort action that is tried to a jury and in which a plaintiff makes a claim for compensatory damages and a claim for punitive or exemplary damages, upon the motion of any party, the trial of the tort action shall be bifurcated * * *."

{¶ 8} In *Barnes v. Univ. Hosps. of Cleveland*, Cuyahoga App. Nos. 87247, 87285, 87710, 87903, and 87946, 2006-Ohio-6266, ¶ 34, affirmed in part and reversed in part on other grounds 119 Ohio St.3d 173, 2008-Ohio-3344, 893 N.E.2d 142, we held that a court retains discretion to determine whether bifurcation is appropriate even in the face of R.C. 2315.21(B) and its mandatory language. Generally, a court's jurisdiction is set by the legislature, but as the Ohio Supreme Court noted, "the Modern Courts Amendment of 1968, Section 5(B), Article IV, Ohio Constitution, empowers this court to create rules of practice and procedure for the courts of this state. As we explained in *Proctor v. Kardassilaris*, 115 Ohio St.3d 71, 2007-Ohio-4838, 873 N.E.2d 872, Section 5(B), Article IV 'expressly states that rules created in this manner "shall not abridge, enlarge, or modify any substantive right." ' Id. at ¶ 17. 'Thus, if a rule created pursuant to Section 5(B), Article IV conflicts with a statute, the rule will control for procedural matters, and the statute will control for matters of substantive law.' Id." *Erwin v. Bryan,* 125 Ohio St.3d 519, 2010-Ohio-2202, 929 N.E.2d 1019, ¶ 28. Since bifurcation is a procedural matter, the trial court retains discretion in determining whether such an action is warranted.

{¶ 9} This determination is further buttressed by this court's decision in *Havel v. Villa St. Joseph*, Cuyahoga App. No. 94677, 2010-Ohio-5251,[3] in which we held that R.C. 2315.21(B)(1) is an unconstitutional usurpation of the judiciary's ability to control procedural matters because it conflicts with Civ.R. 42(B).[4] Id. at ¶ 9. The Fifth District Court of Appeals has agreed with this determination. *Myers v. Brown,* Stark App. No. 2010-CA-00238, 2011-Ohio-892; *Plaugher v. Oniala,* Stark App. No. 2010 CA 00204, 2011-Ohio-1207, ¶19-20. However, the Tenth District, in *Hanners v. Ho Wah Genting Wire & Cable SDN BHD*, Franklin App. No. 09AP-361, 2009-Ohio-6481, ¶ 30, held that R.C. 2315.21 is substantive law in a procedural package. This interpretation deprives courts of the power granted under the constitution of this state. "If then the courts are to regard the constitution; and the constitution is superior to any ordinary act of the legislature; the constitution, and not such ordinary act, must govern the case to which they both apply." *Marbury v. Madison* (1803), 5 U.S. (1 Cranch) 137, 178, 2 L.Ed. 60.

---

[3] This issue is currently before the Ohio Supreme Court to resolve a conflict between districts. See *Havel v. Villa St. Joseph*, 127 Ohio St.3d, 1530, 2011-Ohio-376, 940 N.E.2d 985.

[4] This Civil Rule states, "[T]he court, after a hearing, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims * * *."

{¶ 10} Appellants also argue that their motion was unopposed and therefore should have been granted whether based on R.C. 2315.21 or Civ.R. 42(B). However, under the above cases, the trial court retains discretion to decide the issue. To constitute an abuse of discretion, the ruling must be unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140.

{¶ 11} *Barnes* found that "[t]he issues surrounding compensatory damages and punitive damages in this case were closely intertwined. [Appellant's] request to bifurcate would have resulted in two lengthy proceedings where essentially the same testimony given by the same witnesses would be presented. Knowing that bifurcation would require a tremendous amount of duplicate testimony, the presiding judge determined it was unwarranted." Id., 2006-Ohio-6266, at ¶ 35.

{¶ 12} Here, the malice evidence required for punitive damages was also the evidence used to rebut appellants' arguments that Luri was terminated for cause. The manufacture of evidence was intertwined in arguments relating to both compensatory and punitive damages. Appellants also argue that the trial court should not have allowed testimony about the financial position of appellants, but it was Krall, while on cross-examination, who introduced this line of questioning without prompting from Luri. Therefore,

the trial court did not abuse its discretion in denying appellants' bifurcation motion.

## Application of Other Ohio Tort Reform Provisions

{¶ 13} In their second and third assignments of error, appellants argue that the trial court committed plain error when it failed to apply various provisions of R.C. Chapter 2315. First, appellants claim that the trial court failed to instruct the jury pursuant to R.C. 2315.18(C).[5] However, appellants never requested such an instruction and specifically agreed to their propriety before submission to the jury.[6]

{¶ 14} We must first determine whether these provisions apply to an action based on R.C. 4112. In analyzing whether the punitive-damages caps within R.C. 2315.21 applied to a claim of a breach of fiduciary duty under R.C. 1751.09, Ohio's Southern District Court determined that they do not apply based on the language in R.C. 1701.59 and the intent of the legislature. *Kramer Consulting, Inc. v. McCarthy* (Mar. 8, 2006), S.D.Ohio No. C2-02-116. While the same reasoning would appear to apply to claims under R.C. 4112, the same court later held that "an action brought under Ohio Rev. Code 4112 is a 'tort action' as it is 'a civil action for damages for injury or loss to person or property.' " *Geiger v. Pfizer, Inc.* (Apr. 15, 2009),

---

[5] Appellants' statement of this error reads, "The trial court erred in failing to submit an instruction regarding noneconomic damages, as required by R.C. 2315.18(C)."

S.D.Ohio No. 2:06-CV-636, 2009 WL 1026479, quoting *Ridley v. Fed. Express*, Cuyahoga App. No. 82904, 2004-Ohio-2543, ¶ 89, citing former R.C. 2315.21(A)(1). This finding would include such actions within the umbra of Ohio's tort-reform provisions.

{¶ 15} The Ohio Supreme Court has also noted the types of actions to which R.C. 2315.18 does not apply and held them to include "tort actions in the Court of Claims or against political subdivisions under R.C. Chapter 2744, * * * actions for wrongful death, medical or dental malpractice, or breach of contract. R.C. 2315.18(A)(7) and (H)(1) through (3)." *Arbino v. Johnson & Johnson*, 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, ¶ 27, fn. 3. Absent from this list are actions based on statutory remedies, including, among others, discrimination suits. When coupled with the holdings above, R.C. 2315 et seq. applies to retaliatory-discharge actions brought under R.C. 4112, and the trial court was required to apply its provisions if appropriately asked.

{¶ 16} R.C. 2315.18(C) provides, "In determining an award of compensatory damages for noneconomic loss in a tort action, the trier of fact shall not consider any of the following:

{¶ 17} "(1) Evidence of a defendant's alleged wrongdoing, misconduct, or guilt;

---

[6] Appellate counsel for appellants would like it known that they were not trial counsel.

**{¶ 18}** "(2) Evidence of the defendant's wealth or financial resources;

**{¶ 19}** "(3) All other evidence that is offered for the purpose of punishing the defendant, rather than offered for a compensatory purpose."

**{¶ 20}** Because appellants never requested instructions based on R.C. 2315.18, we review this assigned error under a plain-error analysis. "In appeals of civil cases, the plain-error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson* (1997), 79 Ohio St.3d 116, 679 N.E.2d 1099, syllabus. Therefore, to constitute plain error, the error must be "obvious and prejudicial error, neither objected to nor affirmatively waived," and "if permitted, would have a material adverse effect on the character and public confidence in judicial proceedings." *Hinkle v. Cleveland Clinic Found.*, 159 Ohio App.3d 351, 2004-Ohio-6853, 823 N.E.2d 945, ¶ 78.

**{¶ 21}** Here, appellants collaborated with the court and Luri in crafting the jury instructions given. Several courts of appeals have held that an agreed-upon jury instruction that forms the basis for error on appeal is invited error. See *State v. Briscoe*, Cuyahoga App. No. 89979, 2008-Ohio-6276, ¶ 33 (objection to an agreed jury instruction on appeal

constituted invited error, which was not grounds for reversal); *Merkl v. Seibert*, Hamilton App. Nos. C-080973 and C-081033, 2009-Ohio-5473, ¶ 48 ("Not only did Merkl fail to object to the court's instruction, but she collaborated with the court and defense counsel on its wording and specifically agreed to the instruction as given. Merkl cannot take advantage of an error that she invited or induced the court to make").

{¶ 22} Appellants did not submit such a limiting instruction or even mention R.C. Chapter 2315 when proposing jury instructions. Appellants' initial proposed jury instructions for compensatory damages stated, "[Y]ou will decide by the greater weight of the evidence an amount of money that will reasonably compensate [Luri] for the actual damage proximately caused by the conduct of [appellants]. In deciding this amount, if any, you will consider the nature, character, seriousness, and duration of any emotional pain, suffering or inconvenience [Luri] may have experienced." The amended proposed instructions are substantially the same. Appellants never raised this issue before the trial court when it could have been addressed, and their oversight should not result in reversal. See *Friedland v. Djukic*, Cuyahoga App. Nos. 94319 and 94470, 2010-Ohio-5777, ¶ 40.

{¶ 23} Similarly, appellants' issue with the failure of the court to provide a jury interrogatory detailing findings on noneconomic damages was invited.[7] The invited-error doctrine equally applies here where the jury instructions, verdict forms, and jury interrogatories were approved by appellants without even suggesting the now complained-of error. See *Siuda v. Howard*, Hamilton App. Nos. C-000656 and C-000687, 2002-Ohio-2292.

{¶ 24} R.C. 2315.18(D) states, "If a trial is conducted in a tort action to recover damages for injury or loss to person or property and a plaintiff prevails in that action, * * * the jury in a jury trial shall return a general verdict accompanied by answers to interrogatories, that shall specify all of the following: (1) The total compensatory damages recoverable by the plaintiff; (2) [t]he portion of the total compensatory damages that represents damages for economic loss; (3) [t]he portion of the total compensatory damages that represents damages for noneconomic loss."

{¶ 25} In *Faieta v. World Harvest Church*, Franklin App. No. 08AP-527, 2008-Ohio-6959, ¶ 84-85, the Tenth District Court of Appeals noted that "defendants not only failed to object to the jury interrogatories and verdict forms, they invited the alleged error. Defendants drafted verdict forms and interrogatories and submitted them to the trial court. Like those actually

_____

[7] Appellants' assigned error states, "The trial court erred by failing to provide the interrogatory required by R.C. 2315.18(D) and by failing to apply the cap on noneconomic

submitted to the jury, defendants' drafts asked the jury to determine the amount of damages awarded to 'plaintiffs' collectively, not individually, and they did not ask the jury to apportion each type of damages between each defendant."

{¶ 26} In the present case, appellants submitted interrogatories and agreed upon the final versions submitted to the jury. Those interrogatories did not separate past and future economic damages, nor economic and noneconomic damages. Appellants' failure to raise the issue and their proffering of the relied-upon interrogatories invited the error.

{¶ 27} Appellants never sought the application of Ohio tort-reform provisions during trial, apart from bifurcation. It was only in postverdict motions that appellants asked the trial court for their application. This error on appellants' part should not serve as the basis for obtaining a new trial when it could have so easily been addressed and corrected if properly raised.

{¶ 28} By failing to request an interrogatory distinguishing noneconomic damages, the trial court could not apply the damages limits set forth in R.C. 2315.18(B)(2),[8] which appellants requested in their posttrial motions. This

---

compensatory damages in R.C. 2315.18(B)(2)."

[8] "[T]he amount of compensatory damages that represents damages for noneconomic loss that is recoverable in a tort action under this section to recover damages for injury or loss to person or property shall not exceed the greater of two hundred fifty thousand dollars or an amount that is equal to three times the economic loss, as determined by the trier of fact, of the plaintiff in that tort action to a maximum of three hundred fifty thousand dollars for each plaintiff in that tort action or a maximum

failure was precipitated by appellants' submission of interrogatories and jury instructions that did not provide for such details. Appellants failed to raise these issues at the proper time, and their nescience should not result in a new trial. Accordingly, these assignments of error are overruled.

## Punitive-Damage Caps

{¶ 29} Appellants next argue that, when presented with a proper posttrial motion, the trial court "fail[ed] to apply the Ohio Tort Reform provision in R.C. 2315.21(D)(2)(a), which require[d] the trial court to apply a cap on punitive damages equal to twice the amount of compensatory damages."

{¶ 30} R.C. 2315.21(D)(2)(a) provides, "In a tort action, the trier of fact shall determine the liability of any defendant for punitive or exemplary damages and the amount of those damages. * * * Except as provided in division (D)(6) of this section, all of the following apply regarding any award of punitive or exemplary damages in a tort action: (a) The court shall not enter judgment for punitive or exemplary damages in excess of two times the amount of the compensatory damages awarded to the plaintiff from that defendant, as determined pursuant to division (B)(2) or (3) of this section."

{¶ 31} Our holding above, that Ohio tort reform provisions apply to discrimination actions, means that upon proper motion, the trial court was

---

of five hundred thousand dollars for each occurrence that is the basis of that tort action."

required to limit the award of punitive damages to two times the amount of compensatory damages. In this case, the trial court was not prevented from applying this provision by appellants' failure to call it to the court's attention when it had the ability to address such a request. This is because the trial court could apply the limit without engaging in the type of guessing game required in applying the compensatory-damage provisions. See *Srail v. RJF Internatl. Corp.* (1998), 126 Ohio App.3d 689, 702, 711 N.E.2d 264. Therefore, the trial court erred in failing to limit the amount of punitive damages to $7 million. Luri argues that the amount of punitive damages should be calculated for each defendant, meaning that each would be subject to punitive damages up to $7 million. While there may be cases where Luri's calculation would apply, that is not the case here, where Luri advanced a single-employer theory of liability to impute wrongdoing to multiple business entities in this case. Because Luri can collect at most $3.5 million in compensatory damages, the trial court should have limited the amount of punitive damages to $7 million. Its failure to do so necessitates reversal and remand.

## Due Process

{¶ 32} In their fifth assignment of error, appellants argue that the award of $43 million in punitive damages violates their due process rights under the federal and state constitutions.[9] While our holding above limits this argument, it does not completely dispose of it.

{¶ 33} In *BMW v. Gore* (1996), 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809, the Supreme Court attempted to outline the permissible bounds of punitive-damage awards under the Due Process Clause of the United States Constitution. It recognized, "Punitive damages may properly be imposed to further a State's legitimate interests in punishing unlawful conduct and deterring its repetition. In our federal system, States necessarily have considerable flexibility in determining the level of punitive damages that they will allow in different classes of cases and in any particular case. Most States that authorize exemplary damages afford the jury similar latitude, requiring only that the damages awarded be reasonably necessary to vindicate the State's legitimate interests in punishment and deterrence." (Citations omitted.) Id. at 568.

{¶ 34} The court set forth three factors it used to analyze the punitive-damages award before it: The reprehensibility of the conduct, the

---

[9] This assigned error states, "The trial court erred by failing to reduce the punitive damages because they are violative of the U.S. Constitution and Ohio law."

disparity between the harm or potential harm suffered and the amount of the award, and the difference between the award and the civil penalties authorized or imposed in comparable cases. Id. at 575. See also *State Farm Mut. Auto. Ins. Co. v. Campbell* (2003), 538 U.S. 408, 123 S.Ct. 1513, 155 L.Ed.2d 585. The Ohio Supreme Court has directed this court to apply the *Gore* factors to independently determine whether an award is excessive. *Barnes*, 2006-Ohio-6266, at ¶ 40.

{¶ 35} Appellants demonstrated reprehensible conduct in this case. After Luri refused to engage in what he thought was discriminatory conduct, Bowen devised a plan to terminate him, fabricated evidence, and submitted this evidence during discovery to justify his actions. Krall then used this fabricated evidence for the same justification. After terminating Luri from a job in a specialized, consolidated industry, appellants refused to waive the noncompete clause in his employment contract, which further hampered Luri's ability to support himself and his family. This conduct weighs heavily in favor of a large punitive-damage award and is the most important factor in the *Gore* analysis. See *Gore,* 517 U.S. at 575. The trial court also found that this conduct demonstrated a pattern of repeated retaliatory and discriminatory conduct. Nothing in the record demonstrates to this court that this finding was incorrect. From an action plan calling for the termination or demotion of some of appellants' oldest employees, to

fabricating evidence in an attempt to justify Luri's termination, there is evidence in the record supporting a pattern of conduct justifying substantial punitive damages.

{¶ 36} The harm suffered by Luri was also significant in this case. Appellants would have this court determine that a ratio of compensatory to punitive damages of one-to-one is appropriate in this case because the harm was economic, and Luri was a well-paid executive who was not economically vulnerable. While Luri did earn a substantial salary, as the trial court noted, citing *Wightman v. Consol. Rail Corp.* (1999), 86 Ohio St.3d 431, 715 N.E.2d 546, a "punitive damages award is more about a defendant's behavior than the plaintiff's loss."

{¶ 37} Here, comparable jury verdicts imposed where a pattern of persistent conduct was shown demonstrate that a two-to-one ratio is not beyond the bounds of due process. *Merrick v. Paul Revere Life Ins. Co.* (D.Nev.2008), 594 F.Supp.2d 1168, 1190; *Burns v. Prudential Secs., Inc.*, 167 Ohio App.3d 809, 2006-Ohio-3550. This court has also upheld a five-to-one ratio in an employment-discrimination case. *Griffin v. MDK Food Serv., Inc.*, 155 Ohio App.3d 698, 2004-Ohio-133, 803 N.E.2d 834, ¶ 49, 57.

{¶ 38} In this case, appellants' behavior speaks to an award of punitive damages in the full amount authorized by the legislature. On remand, the

trial court should feel free to enter an amount of punitive damages up to the bounds imposed by R.C. 2315.21.

## Prejudgment Interest

{¶ 39} Appellants finally argue that the trial court erred in awarding prejudgment interest on the full amount of compensatory damages when that amount included pay Luri would not have yet earned, or "future damages."[10]

{¶ 40} R.C. 1343.03(C)(1) states, "Interest on a judgment, decree, or order for the payment of money rendered in a civil action based on tortious conduct and not settled by agreement of the parties, shall be computed from the date the cause of action accrued to the date on which the money is paid if, upon motion of any party to the action, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case."

{¶ 41} This statute encourages the "settlement of meritorious claims, and the compensation of a successful party for losses suffered as the result of the failure of an opposing party to exercise good faith in negotiating a settlement." *Lovewell v. Physicians Ins. Co. of Ohio* (1997), 79 Ohio St.3d

---

[10] This assigned error states, "The trial court erred by awarding prejudgment interest on front-pay compensatory damages."

143, 147, 679 N.E.2d 1119. "Therefore, an injured party in a tort action is, under appropriate circumstances, entitled to recover interest from the date the cause of action accrues." *Andre v. Case Design, Inc.*, 154 Ohio App.3d 323, 2003-Ohio-4960, 797 N.E.2d 132, ¶ 7.

{¶ 42} Appellants did not request that the jury parse the amount of compensatory damages into any categories. As with the application of provisions of Ohio's tort-reform statutes, appellants invited this error by submitting instructions and interrogatories that did not separate out future damages. Appellants' error will not induce this court "to speculate concerning the specifics of the jury's award." *Srail,* 126 Ohio App.3d at 702. This assignment of error is overruled.

## Conclusion

{¶ 43} Appellants caused a great many of the supposed errors complained of in this case, which should not result in reversal. However, on proper motion, the trial court should have applied the damages caps set forth in R.C. 2315.21(D)(2)(a). Accordingly, this case must be remanded.

{¶ 44} This cause is affirmed in part and reversed in part, and the cause is remanded to the lower court for further proceedings consistent with this opinion.

Judgment affirmed in part

and reversed in part,

and cause remanded.

GALLAGHER, J., concurs.
KILBANE, A.J., concurs in part and dissents in part.

KILBANE, A.J., concurs in part and dissents in part.

{¶ 45} I respectfully dissent from the majority's determination that the trial court should have limited the amount of punitive damages to $7 million. I would conclude that plaintiff is entitled to $7 million in punitive damages *from each defendant* rather than $7 million in total punitive damages.

{¶ 46} R.C. 2315.21(D) sets forth certain limits on punitive damages and provides:

> (2) Except as provided in division (D)(6) of this section, all of the following apply regarding any award of punitive or exemplary damages in a tort action:
>
> (a) The court shall not enter judgment for punitive or exemplary damages in excess of two times the amount of the compensatory damages awarded to the plaintiff from that defendant, as determined pursuant to division (B)(2) or (3) of this section.

{¶ 47} The defendants maintain that because the trial court determined that they were jointly and severally liable to Luri in the amount of $3.5

million, this is the amount "awarded to the plaintiff." Therefore, defendants claim that plaintiff's recovery of punitive damages is limited to two times this amount or a total of $7 million in punitive damages. This interpretation omits key terms of the statute, however, which calculates the punitive damages as "two times the amount of the compensatory damages awarded to the plaintiff *from that defendant*." (Emphasis added.) *Arbino v. Johnson & Johnson*, 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420 ("The statute limits punitive damages in tort actions to a maximum of two times the total amount of compensatory damages awarded to a plaintiff per defendant"). The determination of joint and several liability does not alter this analysis, as plaintiff has been awarded compensatory damages "from that defendant." There is no provision for limiting the awards where there are joint and several tortfeasors. I therefore dissent insofar as the majority has limited plaintiff's recovery to punitive damages in this matter to $7 million.