JOURNAL ENTRY AND OPINION
{¶ 1} Appellant Ivan Djukic appeals the trial court's decision overruling his motion in limine and objections, to the trial testimony of Michael Eppig, M.D. Djukic assigns the following errors for our review:
 "I. The trial court erred in overruling plaintiff's motion in limine and objections at trial to the testimony of Michael Eppig, M.D., who was not listed as a defense witness, who had not submitted an expert's report pursuant to Local Rule 21.1, who refused proper cross-examination and for not allowing plaintiff the seven days required by Civil Rule 16 to respond to defendant's motion to compel said doctor's testimony."
 "II. The Court erred by not taking judicial notice of a certified copy of the court docket showing that defense counsel had previously personally *Page 2 
served as his testifying witness's attorney and not admitting same into evidence."
 "III. The Court erred in not allowing Dr. Marsolais to give his opinion on the proximate cause of plaintiff's injuries."
 {¶ 2} Having reviewed the record and pertinent law, we affirm the trial court's decision. The apposite facts follow.
 {¶ 3} On July 16, 2001, appellee Michelle Turner struck the rear-end of Djukic's 1999 Ford truck as Djukic traveled along Interstate 77 South in the City of Independence, Ohio. On July 3, 2003, Djukic filed suit against Turner alleging personal injuries sustained as a result of the collision. The complaint also alleged that Turner, at the time of the collision, operated her automobile at a dangerous and illegal speed. The complaint further alleged that Turner's blood alcohol content was in excess of .10% at the time of the accident. Turner conceded the issue of negligence, and the case proceeded to trial solely on the issues of damages and proximate cause, as well as punitive damages.
 {¶ 4} On October 7, 2005, approximately two weeks prior to the originally scheduled trial date, Turner notified Djukic of her intent to depose Michael Eppig, M.D., one of Djukic's treating physicians. Djukic advised Turner that he objected to the deposition because Dr. Eppig was not listed as a witness for the defense prior to October 7, 2005, and had not submitted an expert's report pursuant to Local Rule 21.1. *Page 3 
 {¶ 5} On October 13, 2005, Turner filed a motion to compel Dr. Eppig's deposition. The following day, the trial court acknowledged that Dr. Eppig was not listed as a defense witness and had not submitted an expert's report. The trial court advised Djukic that it intended to grant Turner's motion to compel Dr. Eppig's deposition. However, the trial court advised Djukic that it was granting Turner's motion to compel Dr. Eppig's deposition as a fact witness, and not as an expert witness.
 {¶ 6} In response to the trial court's ruling, Djukic filed a motion in limine asking to exclude Dr. Eppig from testifying as an expert. After Dr. Eppig was deposed, Djukic filed a second motion in limine to exclude the testimony. In the second motion, Djukic alleged that Dr. Eppig refused proper cross-examination during the deposition. The trial court overruled the second motion in limine.
 {¶ 7} At trial, Djukic renewed both motions in limine, which the trial court overruled. Djukic also requested that the trial court take judicial notice that Turner's defense counsel had represented Dr. Eppig in a previous lawsuit, and Djukic offered a certified journal entry to prove his assertions. The trial court rejected the offer of the journal entry and declined to take judicial notice.
 {¶ 8} At trial, Djukic called Dr. Ernest Marsolais as an expert witness. Turner objected to Dr. Marsolais testifying as to the proximate cause of Djukic's injuries. Turner argued that the expert's report Dr. Marsolais submitted never indicated that the injuries Djukic sustained were related to the history he noted. Prior to testifying, *Page 4 
Dr. Marsolais submitted a note to the trial court indicating that Djukic's counsel had requested a more exact report, but due to Dr. Marsolais' office's error and his brief retirement, none was included. The trial court ruled that Dr. Marsolais could not testify to the proximate cause of Djukic's injuries.
 {¶ 9} At the conclusion of the trial, the jury returned a verdict in Djukic's favor. The jury awarded Djukic $19,000 in compensatory damages, but did not award punitive damages.
 Expert Witness {¶ 10} In his first assigned error, Djukic argues the trial court erred when it overruled his motion in limine to exclude the testimony of Michael Eppig, M.D., who had not submitted an expert's report as required by Local Rule 21.1. We disagree.
 {¶ 11} Our standard of review on the admission of evidence is whether the trial court abused its discretion.[1] An "abuse of discretion" means more than an error of law or judgment. Rather, an abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable.[2]
 {¶ 12} The portions of Local Rule 21.1 at issue here are sections (B) and (C), which state: *Page 5 
 "(B) A party may not call an expert witness to testify unless a written report has been procured from the witness and provided to opposing counsel. * * * The report of an expert must reflect his opinions as to each issue on which the expert will testify. An expert will not be permitted to testify or provide opinions on issues not raised in his report.
 (C) All experts must submit reports. If a party is unable to obtain a written report from an expert, counsel for the party must demonstrate that a good faith effort was made to obtain the report and must advise the court and opposing counsel of the name and address of the expert, the subject of the expert's expertise together with his qualifications and a detailed summary of his testimony. In the event the expert witness is a treating physician, the Court shall have the discretion to determine whether the hospital and/or office records of that physician's treatment which have been produced satisfy the requirements of a written report. The Court shall have the power to exclude testimony of the expert if good cause is not demonstrated * * *."
 {¶ 13} One of the purposes of the Rules of Civil Procedure is to eliminate surprise.[3] This is accomplished by way of a discovery procedure which man-dates a free flow of accessible information between the parties upon request, and which imposes sanctions for failure to timely respond to reasonable inquiries.[4]
 {¶ 14} Loc.R.21.1 effectuates the purpose of eliminating surprise by regulating in a comprehensive manner discovery relating to expert witnesses. The purpose of the rule is to eliminate surprise, with the existence and effect of prejudice resulting from noncompliance being the primary concern.[5] *Page 6 
 {¶ 15} In the instant case, the trial court overruled Djukic's motion in limine and allowed the deposition of Dr. Eppig to go forward as a fact witness. This meant that Dr. Eppig was generally limited to testifying only to facts and leaving to the jury the job to make the necessary and natural deductions from those facts.
 {¶ 16} The Ohio Supreme Court and this court have consistently held that the court has discretion to determine whether there has been a violation of Local Rule 21.1 and how to remedy that violation.[6]
 {¶ 17} Here, the trial court's remedy restricting Dr. Eppig's testimony to that of a fact witness was appropriate. We have previously held that the testimony of a treating physician, when restricted to the fact of treatment rendered, and the dates and charges therefor, is not subject to the regulations of Local R. 21[7] The Rule properly regulates expert opinion testimony as to permanency, future damages, diagnosis and prognosis.[8]
 {¶ 18} A review of Dr. Eppig's deposition testimony reveals that Dr. Eppig provided no testimony as to permanency, future damages, diagnosis and prognosis. Dr. Eppig only testified about dates of and the treatment he rendered to Djukic. As such, Dr. Eppig was not testifying in an expert capacity. Consequently, we find that *Page 7 
the trial court properly included the fact testimony of Dr. Eppig as it did not contravene the requirements of Local R. 21.1.
 {¶ 19} Djukic also argues that the trial court erred in permitting Dr. Eppig's testimony because his name was not furnished as a potential witness prior to trial. We are not persuaded.
 {¶ 20} A trial court may exclude the testimony of an undisclosed witness as a sanction, but the sanction is only appropriate when the failure to disclose the witness caused unfair surprise with the result and prejudice to the opposing party.[9]
 {¶ 21} In the instant case, Dr. Eppig was one of Djukic's treating physician relative to the alleged injuries sustained as a result of the collision. As such, Djukic was well aware of Dr. Eppig's existence, that he had relevant information, and that he could be called to testify. The record before us indicates that information relative to Dr. Eppig's treatment of Djukic was submitted as part of Djukic's List of Specials.[10] Consequently, there was no unfair surprise or prejudice as a result of Dr. Eppig's testimony.
 {¶ 22} Nonetheless, Djukic argues that on cross-examination during the deposition, Dr. Eppig refused to answer relevant questions, thus the trial court erred in admitting the testimony. We are not persuaded. *Page 8 
 {¶ 23} The following exchange took place during Dr. Eppig's deposition:
 "Q. * * * Well, the records are there, Doctor. I've asked you to take a look at them.
 A. I know, but I haven't read them.
 Q. Okay, but I'm asking you to look at them now.
 A. I'm not going to judge other people's exams, histories, competence or impressions.
 Q. Doctor, I don't know that you have that choice. I mean, I am entitled to show you a particular record that's introduced into the trial in this particular case and just ask you to comment on it. I'm not trying to criticize any other doctors. I just want to know whether anywhere in his admission to Parma Hospital he had in any way complained of any thoracic pain.
 A. I have not been asked here to be an expert witness, to evaluate other people's care. I've been asked here to report and reflect on my examination and my review of the information based on the three visits with the patient to me in my clinic. I was not then asked to be an expert witness. I was asked to provide medical information at that time in history."[11]
 {¶ 24} A review of the above excerpt, and elsewhere in the record, reveals that Dr. Eppig was aware that he was being deposed as a fact witness and was not there to render any expert opinion. As previously noted, our review of the record indicates that Dr. Eppig only provided testimony regarding his treatment of Djukic. As such, we conclude on the record before us, the trial court did not abuse its discretion in overruling Djukic's motion in limine to exclude the testimony of Dr. Eppig. Accordingly, we overrule the first assigned error. *Page 9 
 Judicial Notice {¶ 25} In the second assigned error, Djukic argues the trial court erred by not taking judicial notice of a certified copy of a journal entry showing that Turner's defense counsel had previously represented Dr. Eppig. We disagree
 {¶ 26} Pursuant to Evid.R. 201, a court may take judicial notice of adjudicative facts.[12] A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.[13] A court may take judicial notice, whether requested or not, and must take judicial notice if requested by a party and supplied with the necessary information that would allow it to do so.[14] Additionally, a court may take judicial notice at any stage of the proceedings.[15]
 {¶ 27} In the instant case, Djukic asked the trial court to take judicial notice that Turner's defense counsel had previously represented Dr. Eppig. Djukic offered a certified copy of the journal entry as an exhibit. As gleaned from the record before us, the certified copy of the journal entry indicated that defense counsel had *Page 10 
represented a Michael Eppig twenty-six years earlier. Thereafter, the following exchange took place:
 "Mr. Kenneally: I have no memory of ever meeting a Dr. Eppig. I was a second-year attorney, associate attorney with a firm that's now defunct; Myers, Henteman, Schneider Aronoff. It was probably a case that I had filed an answer and attended a pretrial and the case got resolved. I never met the man. I have no memory of that. How that could be relevant to the fact that he was called as a witness. Jack O'Donnell took his testimony. I wasn't the one examining him. How it could have any relevance to this case pales in my mind, your Honor, and absolutely there's an insinuation, if it is entered into evidence that I failed to disclose something without more —
 The Court: But just so I'm clear, Dr. Eppig was a treating physician of the plaintiff, he was not a defense expert, was he?
 Mr. Friedland: I didn't call him.
 The Court: You didn't answer my question. Was he the treating physician?
 Mr. Friedland: He testified he was a consulting physician. He's a treating physician.
 The Court: Who did — your client went to see him, right?
 Mr. Friedland: My client went to see him.
 The Court: Then it's overruled. You made your record.
 Mr. Friedland: So you're not allowing —
 The Court: I'm not going to allow you to introduce that exhibit.
 Mr. Friedland: It's not Terry that I'm concerned about not remembering it. I'm concerned that Dr. Eppig who doesn't have thousands of automobile accidents, *Page 11 
only maybe had a couple in his entire life, if any, more that one remembers Mr. Keannelly's name.
 The Court: It's even less relevant because Mr. Kenneally isn't the one that deposed him. Jack O'Donnell deposed him."[16]
 {¶ 28} We conclude, given the circumstances of the instant case, the trial court correctly refused to take judicial notice that defense counsel might have previously represented Dr. Eppig. The alleged representation took place twenty-six years ago, Djukic sought treatment from Dr. Eppig, defense counsel did not conduct the deposition, and Dr. Eppig testified as a fact witness. Consequently, the trial court did not abuse its discretion in not admitting the certified copy of the journal entry into evidence. Accordingly, we overrule the second assigned error.
 Opinion Testimony {¶ 29} In the third assigned error, Djukic argues the trial court erred by not allowing Dr. Marsolais to render an opinion on the proximate cause of Djukic's injuries. We disagree.
 {¶ 30} As previously stated in the first assigned error, pursuant to Local R. 21.1(B), the report of an expert must reflect his opinions as to each issue on which the expert will testify. Thus, an expert will not be permitted to testify or provide opinions on issues not raised in his report. *Page 12 
 {¶ 31} In the instant case, the trial court did not permit Dr. Marsolais to offer opinion testimony as to the proximate cause of Djukic's injuries, because Dr. Marsolais' expert's report did not include any discussion on the issue of proximate cause. We conclude that the trial court adhered to Local R. 21.1(B). We also conclude that the trial court's decision was not prejudicial.
 {¶ 32} At trial, Dr. Marsolais testified as follows about Djukic's first appointment:
 "Q. Can you tell the jury, give a little history about what Mr. Djukic told you when he came into your office on September 25th?
 A. When I saw him on September 25th, he had chief complaints of pain from the upper waist to the base of the neck on both sides of his whole spine through here. And he told me that he had had no problem with his back, with his spine at all until he had been in a car accident where he was driving about 60 and was hit by somebody else driving a lot faster, and there was enough energy in this interaction to give $6500 damage to Mr. Djukic's car, which would mean there is a lot of energy involved. He said the car moved about 300 feet after the accident. He said he felt some right to left motion, too, with it, all of it primarily straight from behind. He said that he had noted pain in his neck, thoracic pain, spine, and felt some numbness in his face right away. He was taken to Parma Hospital. Was told to follow up with Dr. Vilinisky, was given a collar, felt worse the next day, was able to get in to see Dr. Vilinisky about two weeks post the injury and then was told to see Mr. Miller. And it was his understanding that Dr. Miller had gotten an MRI of the brain and had sent him for therapy. Reason for the brain is because of the numbness in the face to see if there might be something in the brain that's causing that. He felt that the therapy had helped a little bit, but didn't really bring him back to what he was before the accident."[17] *Page 13 
 {¶ 33} A review of the above excerpt indicates that Dr. Marsolais, without specifically stating that the accident was the proximate cause of Djukic's injuries, provided sufficient information for the jury to infer the link between the accident and the injuries. Dr. Marsolais' testimony highlighted the nature of the accident and the pain Djukic complained of thereafter. Dr. Marsolais' testimony also indicated that Djukic revealed that the therapy he had received had not brought him back to the way he was before the accident.
 {¶ 34} Moreover, the jury's verdict in favor of Djukic, indicates that they did infer a causal connection between the accident and the injuries complained of. Consequently, Djukic suffered no prejudice from the trial court's ruling that Dr. Marsolais could not testify on the issue of proximate cause, because of his failure to address this issue in his expert's report. Accordingly, we overrule the third assigned error.
Judgment affirmed.
It is ordered that appellee recover of appellant her costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 14 
JAMES J. SWEENEY, P.J., and MELODY J. STEWART, J., CONCUR
[1] Barnett v. Sexten, 10th Dist No. 05AP-871,2006-Ohio-2271, citing Dunkelberger v. Hay, 10th Dist. No. 04AP-773, 2005-Ohio-3102.
[2] Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, citing State v.Adams (1980), 62 Ohio St.2d 151.
[3] Jones v. Murphy (1984), 12 Ohio St.3d 84, 86.
[4] Id.
[5] Nwabara v. Willacy (1999), 135 Ohio App.3d 120, 133, citingDavid v. Schwarzwald, Robiner, Wolf Rock Co., L.P.A. (1992),79 Ohio App.3d 786, 795.
[6] Vaught v. Cleveland Clinic Found.(Sept 6, 2001), Cuyahoga App. No. 79026. See also Nakoff v. Fairview Gen. Hosp. (1996),75 Ohio St.3d 254, 257-258; Pang v. Minch (1990), 53 Ohio St.3d 186, paragraph one of the syllabus; Walworth v. BP Oil Co. (1996), 112 Ohio App.3d 340,352.
[7] Zinsmeister v. Leamon (May 2, 1985), Cuyahoga App. No. 49028.
[8] Id.
[9] Maggard v. Villegas, 5th Dist. No. 2006-CAE-06-0042, 2007-Ohio-1150, citing Anderson v. Lorain County TitleCompany (1993), 88 Ohio App.3d 367.
[10] Plaintiff s Exhibit 12.
[11] Eppig's Depo. at 44-45.
[12] Concord Twp. Trs. v. Hazelwood Builders, Inc., 11th Dist. No. 2004-L-012, 2005-Ohio-1791.
[13] Evid.R. 201(B).
[14] State v. Lahmann, 12th Dist No. CA2006-03-058,2007-Ohio-1795. See also Evid.R. 201(C) and (D).
[15] Evid.R. 201(F).
[16] Tr. at 272-273.
[17] Tr. at 223-224. *Page 1