FRIEDLAND, Appellee,

v.

DJUKIC, Appellant.

[Cite as *Friedland v. Djukic*, 191 Ohio App.3d 278, 2010-Ohio-5777.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

Nos. 94319 and 94470.

Decided Nov. 24, 2010.

Gallagher Sharp, Monica A. Sansalone, Catherine F. Peters, and Katheryn J. McFadden; and Spitz & Friedland and Dale R. Friedland, for appellee.

Terence E. Scanlon, for appellant.

Frank D. Celebrezze Jr., Judge.

{¶ 1} Appellant, Ivan Djukic, appeals from a judgment in favor of appellee, his former attorney, Dale R. Friedland, in the amount of $7,600 in attorney fees incurred in a personal-injury action. Djukic asserts that the trial court erred in granting summary judgment on his fraud and malpractice claims, in excluding his expert witnesses from trial, in directing a verdict in Friedland's favor for alleged lost punitive damages in the underlying tort suit and for fraud, and in allowing Friedland to sue for a contingency fee based solely on an oral contract. After a thorough review of the record and based on the applicable law, we affirm.

{¶ 2} On July 16, 2001, Djukic was involved in an early morning car accident with Michelle Turner. Turner was driving on Interstate 77 at about 4:00 a.m. when her vehicle hit Djukic's vehicle in the rear. Turner admitted fault and was found to be intoxicated at the time of the incident. Djukic was taken to the hospital and was treated for his injuries and released, with therapy continuing over the next few months.

{¶ 3} Following the completion of this treatment, Djukic saw a number of doctors for various complaints, including a heart problem that he alleged was a result of the accident. No physician would testify that the two were causally connected. Djukic also saw several orthopedic doctors and a neurosurgeon regarding pain in his neck in the two years following the accident. These doctors all testified in their depositions that Djukic did not present conditions related to the accident. Three years after the accident, in 2004, Djukic saw Dr. Ortega, who did an MRI of his neck and upper back and found a bulging or ruptured disk. Dr. Ortega agreed to testify that this was caused or exacerbated by the accident. However, Dr. Michael Eppig, who Djukic had seen in July 2002, testified that when he saw Djukic, the MRI he ordered showed no injury to the spine. Another doctor Djukic had seen, Dr. Ernest Marsolais, was of the opinion that the injury was due to a long-term degradation of the disk known as degenerative disk disease and was not the proximate result of the accident.

{¶ 4} Djukic initially retained Larry Weiser to represent him in the tort suit against Turner. After several disagreements, and after Djukic refused to accept an offer of settlement of $15,000 from Turner's insurance company, Weiser withdrew as counsel. Djukic had a limited amount of time to find new representation, and after several attorneys turned him down, Friedland agreed to take his case. The fee agreement the two worked out was contested at trial. Friedland claimed that they reached an agreement in which Djukic would pay all the trial-preparation costs and 40 percent of whatever was recovered. Djukic admits to agreeing to pay for all the depositions and other expenses, but that was all. In

his deposition testimony, Djukic admitted he knew Friedland was not working for free and assumed that he would have to pay Friedland 25, 33, or 40 percent.

{¶ 5} Friedland interviewed several physicians Djukic had seen and deposed many of them. He also obtained several reports, including that of neurosurgeon Dr. Bhupinder Sawhny. Leading up to trial, Friedland negotiated a settlement offer from Turner's insurance company of $35,000, which Djukic refused. The cause proceeded to trial during which a few of Djukic's physicians testified on Turner's behalf. Djukic presented medical claims in excess of $58,000, but causation was in question because some doctors testified that Djukic was fine after the initial treatment.

{¶ 6} The jury returned a verdict finding that Djukic was entitled to $19,000 in compensatory damages. The jury also awarded no punitive damages, signing the jury form finding in favor of punitive damages, but writing in $0 on the line specifying the amount of such damages. The trial court pointed out that the jury signed the plaintiff's jury form awarding punitive damages, but wrote in $0, and asked whether there were any objections. Neither attorney objected to the forms. The jury form was signed by all eight jurors.

{¶ 7} After several unsuccessful appeals, including an appeal to the United States Supreme Court with different counsel, Friedland sought to acquire his fee and disburse the remainder of the settlement to Djukic. Djukic refused. Friedland instituted suit seeking to collect 40 percent of the $19,000 recovered from the insurance company, roughly $7,600. Djukic cross-claimed for legal malpractice and fraud. He alleged that a copy of a contract attached to Friedland's complaint, which was purported to be an agreement between the parties, contained a signature that had been scanned from another document and copied to the fee agreement. This was the basis of the fraud claim. Djukic also alleged that Friedland had committed malpractice in his representation during the tort suit.

## Law and Analysis

{¶ 8} Friedland now appeals, citing seven assignments of error.[1]

## Lost Punitive Damages

{¶ 9} In his first two assignments of error, Djukic argues that Friedland breached the applicable standard of representation when he failed to object to what Djukic considers an inconsistent verdict since the jury found Turner liable for punitive damages in the underlying tort case but awarded nothing in punitive damages. In granting summary judgment in favor of Friedland, the trial court

---

1. Appellant's seven assignments of error are included in the appendix to this opinion.

determined that "[s]uch damages are purely speculative and awarding such damages against the attorney would not deter future conduct or punish the tortfeasor."

{¶ 10} This court reviews the grant of summary judgment de novo. *Brown v. Scioto Bd. of Cty. Commrs.* (1993), 87 Ohio App.3d 704, 622 N.E.2d 1153. An appellate court reviewing the grant of summary judgment must follow the standards set forth in Civ.R. 56(C). "[T]he reviewing court evaluates the record * * * in a light most favorable to the nonmoving party. * * * [T]he motion must be overruled if reasonable minds could find for the party opposing the motion." *Saunders v. McFaul* (1990), 71 Ohio App.3d 46, 50, 593 N.E.2d 24.

{¶ 11} Any award against Friedland for speculative lost punitive damages would be contrary to the purpose underlying their imposition. Punitive damages are available as a punishment or deterrent to future wrongdoing by a tortfeasor. *Arbino v. Johnson & Johnson,* 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, ¶ 97. The imposition of punishment on Friedland for Turner's conduct does accomplish this goal. This determination is supported in other jurisdictions. California, New York, and Illinois have adopted the position that lost punitive damages are not recoverable in legal-malpractice actions. *Ferguson v. Lieff, Cabraser, Heimann & Bernstein, L.L.P.* (2003), 30 Cal.4th 1037, 135 Cal.Rptr.2d 46, 69 P.3d 965; *Summerville v. Lipsig* (2000), 704 N.Y.S.2d 598, 270 A.D.2d 213; *Tri–G, Inc. v. Burke, Bosselman & Weaver* (2006), 222 Ill.2d 218, 305 Ill.Dec. 584, 856 N.E.2d 389.

{¶ 12} Djukic argues that several jurisdictions have allowed an award for lost punitive damages in a legal-malpractice action to ensure that attorneys do their level best. Arizona, Colorado, Kansas, South Dakota, and the District of Columbia have allowed them. See *Elliott v. Videan* (1989), 164 Ariz. 113, 791 P.2d 639; *Scognamillo v. Olsen* (Colo.Ct.App.1990), 795 P.2d 1357; *Hunt v. Dresie* (1987), 241 Kan. 647, 740 P.2d 1046; *Haberer v. Rice* (S.D.1994), 511 N.W.2d 279; *Jacobsen v. Oliver* (D.D.C.2002), 201 F.Supp.2d 93.

{¶ 13} Kentucky and Tennessee appear to allow recovery of lost punitive damages in a malpractice action but only when the plaintiff is able to show the attorney's actions constitute reckless, malicious, or intentional breaches of care. *McMurtry v. Wiseman* (Aug. 16, 2006), W.D.Ky. Case No. 1:04CV–81–R. In *McMurtry,* the district court recognized that the modern trend is to not allow a party to recover lost punitive damages in a legal-malpractice action. Id. at 3.

{¶ 14} The California Supreme Court, in ruling that lost punitive damages were not recoverable in a legal-malpractice action, cited as one of its reasons the analytical gymnastics required to determine what amount of punitive damages a jury should award. *Ferguson v. Lieff, Cabraser, Heimann & Bernstein,* 30

Cal.4th 1037, 135 Cal.Rptr.2d 46, 69 P.3d 965. This is a significant hurdle to imposing those damages on a party in a malpractice action. "[T]o award lost punitive damages, the trier of fact must determine what moral judgment would have been made by a reasonable jury. Because moral judgments are inherently subjective, a jury cannot objectively determine whether punitive damages should have been awarded or the proper amount of those damages with any legal certainty." (Emphasis omitted.) Id. at 1049. The facts necessary to arrive at an amount of punitive damages would be before the jury in the underlying tort action, and that jury could arrive at an award reflective of the purposes for imposing punitive damages, but all of that evidence would not be before the jury in a malpractice action.

{¶ 15} Also, the purpose of imposing punitive damages is not served when those damages are imposed on a party guilty of mere negligence. The law of Ohio is clear for when punitive damages may be awarded: " '[P]unitive or exemplary damages are not recoverable from a defendant in question in a tort action unless *both* of the following apply:

{¶ 16} " '(1) The actions or omissions of that defendant demonstrate malice * * *, or that defendant as principal or master authorized, participated in, or ratified actions or omissions of an agent or servant that so demonstrate; [and]

{¶ 17} " '(2) The plaintiff in question has adduced proof of actual damages that resulted from actions or omissions as described in division (B)(1) of this section.' " *Malone v. Courtyard by Marriott L.P.* (1996), 74 Ohio St.3d 440, 445, 659 N.E.2d 1242, quoting R.C. 2315.21(B).

{¶ 18} Even if this court were to allow the recovery of punitive damages, Djukic is unable to show either of the elements above. There is no allegation that Friedland acted with malice in prosecuting Djukic's case. Djukic is also unable to meet the substantial burden of demonstrating an amount lost by a preponderance of the evidence. In the underlying tort case, the jury did not skirt the question of punitive damages. It clearly stated an amount of such damages. This is presumptive evidence of an amount of punitive damages in the case. Djukic has not proffered or attempted to proffer any evidence that an award of punitive damages would have been higher had Friedland made an objection to the jury's determination.

{¶ 19} The trial court properly determined that lost punitive damages were not available in the malpractice action. Therefore, exclusion of an expert to testify that failure to object to the award of punitive damages was a breach of the standard of care was also appropriate. Appellant's first and second assignments of error are overruled.

### Directed Verdicts

{¶ 20} In his third and fourth assignments of error, Djukic argues that the trial court erred in directing verdicts for Friedland on Djukic's malpractice and fraud claims. Civ.R. 50(A)(4), which sets forth the grounds upon which a motion for directed verdict may be granted, states:

{¶ 21} "When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue." See also *Crawford v. Halkovics* (1982), 1 Ohio St.3d 184, 1 OBR 213, 438 N.E.2d 890; *Limited Stores, Inc. v. Pan Am. World Airways, Inc.* (1992), 65 Ohio St.3d 66, 600 N.E.2d 1027.

{¶ 22} A directed verdict is appropriate when the party opposing it has failed to adduce any evidence on the essential elements of this claim. *Cooper v. Grace Baptist Church* (1992), 81 Ohio App.3d 728, 734, 612 N.E.2d 357. The issue to be determined involves a test of the legal sufficiency of the evidence to allow the case to proceed to the jury, and it constitutes a question of law, not one of fact. *Hargrove v. Tanner* (1990), 66 Ohio App.3d 693, 695, 586 N.E.2d 141; *Vosgerichian v. Mancini Shah & Assoc.* (Feb. 29, 1996), Cuyahoga App. Nos. 68931 and 68943, 1996 WL 86684. Accordingly, the courts are testing the legal sufficiency of the evidence rather than its weight or the credibility of the witnesses. *Ruta v. Breckenridge–Remy Co.* (1982), 69 Ohio St.2d 66, 68–69, 23 O.O.3d 115, 430 N.E.2d 935.

{¶ 23} Since a directed verdict presents a question of law, an appellate court conducts a de novo review of the lower court's judgment. *Howell v. Dayton Power & Light Co.* (1995), 102 Ohio App.3d 6, 13, 656 N.E.2d 957; *Keeton v. Telemedia Co. of S. Ohio* (1994), 98 Ohio App.3d 405, 409, 648 N.E.2d 856.

{¶ 24} In this case, the court directed a verdict on Djukic's claims of legal malpractice relating to the jury's award of compensatory damages because Djukic called no expert witness to testify to the appropriate standard of care that Friedland allegedly breached.

{¶ 25} Djukic did have an expert, Richard Demsey, who submitted a report, but Demsey had identified only three areas in which it was alleged that Friedland breached the appropriate standard of care. The first was the failure to object to the jury's award of punitive damages. As explained above, the trial court found that the award of lost punitive damages would be inappropriate. This portion of the malpractice claim had previously been dismissed by summary judgment.

{¶ 26} The second area dealt with the lack of a written contingency agreement. The third involved Friedland charging an additional fee to handle Djukic's appeal to this court in the underlying tort case. These two claims were disposed of by the trial court when it granted Friedland's motion to strike. As pointed out in this motion, the conclusory statements made in Demsey's expert report contained no facts to support a claim for a breach of the appropriate standard of care. Djukic now argues that the breach was obvious and no expert testimony was required.

{¶ 27} Success in a legal-malpractice action hinges on negligent representation in a matter when the plaintiff shows (1) an attorney-client relationship giving rise to a duty, (2) a breach of that duty, and (3) damages proximately caused by the breach. *Krahn v. Kinney* (1989), 43 Ohio St.3d 103, 106, 538 N.E.2d 1058. Expert testimony is generally required to establish a breach of duty "unless the breach is within the ordinary knowledge of lay people. *McInnis v. Hyatt Legal Clinics* (1984), 10 Ohio St.3d 112, 113 [10 OBR 437], 461 N.E.2d 1295. If a plaintiff fails to introduce expert testimony when it is required, the defendant attorney is entitled to a directed verdict." *Phillips v. Courtney,* Cuyahoga App. No. 84232, 2004-Ohio-6015, 2004 WL 2578864, ¶ 15, citing *Martin v. Dadisman* (Aug. 24, 2000), Cuyahoga App. No. 77030, 2000 WL 1222018.

{¶ 28} Here, Djukic argues that the reason the jury returned a verdict of only $19,000 was that Friedland failed to file an amended expert report within the deadline set by the trial court. He alleges that this breach is within a lay person's understanding and does not require an expert to expound about the appropriate standard of care.

{¶ 29} The claim includes allegations that of the five doctors Friedland called to testify, only one spoke to causation. Djukic argues that the testimony of Dr. Marsolais as to causation was necessary and crucial. The trial court excluded this testimony because Dr. Marsolais's report did not encompass such information. The trial court noted that causation was shown through Dr. Ortega's testimony. This issue is not one in which the average person could spot a violation of the standard of care because it involves nuanced arguments about the inclusion of expert testimony and calling some witnesses but not others.[2] Without an expert to testify why Dr. Marsolais's testimony was required when the trial court and this court[3] noted that causation was shown through Dr. Ortega's

---

**2.** Djukic admitted that Dr. Marsolais's testimony was not favorable to his case regarding causation. It was Dr. Marsolais's opinion that Djukic's injury was the result of a long-term degenerative disease.

**3.** *Djukic v. Turner,* Cuyahoga App. No. 88849, 2007-Ohio-4433, 2007 WL 2444220.

testimony and indirectly through Dr. Marsolais's testimony, appellant cannot show a breach of the appropriate standard of care.

{¶ 30} The trial court also directed a verdict in favor of Friedland on Djukic's fraud claim. This fraud claim is troubling because it alleges that Friedland attached a document to his complaint that purported to be a contingency agreement signed by Friedland and Djukic memorializing the understanding that Djukic would pay Friedland 40 percent of any recovery and Djukic would also pay the costs of litigation. The problem is that Djukic's signature is a scanned copy placed on the document, while Friedland's is an original signature. Friedland carefully worded his complaint so that it was not necessarily based on the attached contract. At trial, Friedland argued that the parties had an oral agreement.

{¶ 31} While this allegation, if true, would be a violation of the rules of professional ethics and the civil rules of procedure, it does not meet the definition of fraud in Ohio. "Fraud has various elements: (1) a representation (or concealment of a fact when there is a duty to disclose) (2) that is material to the transaction at hand, (3) made falsely, with knowledge of its falsity or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, and (4) with intent to mislead another into relying upon it, (5) justifiable reliance, and (6) resulting injury proximately caused by the reliance." *Volbers–Klarich v. Middletown Mgt., Inc.*, 125 Ohio St.3d 494, 2010-Ohio-2057, 929 N.E.2d 434, ¶ 27, citing *Burr v. Stark Cty. Bd. of Commrs.* (1986), 23 Ohio St.3d 69, 73, 23 OBR 200, 491 N.E.2d 1101.

{¶ 32} Here, there can be no reliance because the trial court was alerted to the possibility that the contingency-fee agreement was altered. Friedland also did not rely on the agreement as the basis for his claim for fees. He argued at trial that the parties had an oral agreement for fees. Further, without reliance, no damages could be shown. The trial court found that "[t]his is not a counterclaim for a civil action fraud. * * * [I]t isn't even a claim that he was damaged through fraud. It's simply an attempt to commit a fraud on the defendant, so I don't see even that the common law cause of action for fraud has been alleged here * * *."

{¶ 33} Djukic argues for the first time here that he incurred increased costs in showing that the document was forged and those are the damages required in a fraud action, and that Friedland relied on the forged document in his combined motion for default judgment and summary judgment. This motion was denied by the trial court, and the issue proceeded to trial. Therefore, the claimed fraud had no effect as a result of these motions.

{¶ 34} Djukic also argued that counterclaiming for fraud was the only way to present the claim. A fraud claim was not the proper vehicle to challenge the validity of the document submitted to the court. Civ.R. 11 allows a party to recover "expenses and reasonable attorney fees incurred in bringing any motion under this rule." See also R.C. 2323.51. Sanctions awarded in a Civ.R. 11 motion would have wholly compensated Djukic for any increased expenses. Therefore, counterclaiming for fraud was not the only remedy available.

{¶ 35} In his fifth assignment of error, Djukic complains that the trial court erred in excluding the expert handwriting evidence that would have supported his counterclaim for fraud. Although the trial court excluded Djukic's handwriting expert once the fraud claim was disposed of, he was still permitted to present evidence that his signature appearing on the fee agreement was forged. It was made clear to the jury that this was not the basis of Friedland's claim for fees. Since the fraud claim was not before the jury, and it was clear to the jury that Djukic's signature on the agreement was forged, the testimony of the handwriting expert was not relevant at trial. Appellant's third, fourth, and fifth assignments of error are overruled.

## Plain Error

{¶ 36} Djukic never argued a simple defense to Friedland's claim for fees based on an oral contingent-fee agreement. All contingent-fee agreements for tort actions must be reduced to writing according to R.C. 4705.15. Djukic now argues in his sixth assignment of error that the trial court erred in allowing Friedland's case to go to the jury without proof of a written and signed contingent-fee agreement.

{¶ 37} "In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson* (1997), 79 Ohio St.3d 116, 679 N.E.2d 1099, syllabus. Therefore, to constitute plain error, the error must be "obvious and prejudicial error, neither objected to nor affirmatively waived," and "if permitted, would have a material adverse effect on the character and public confidence in judicial proceedings." *Hinkle v. Cleveland Clinic Found.*, 159 Ohio App.3d 351, 2004-Ohio-6853, 823 N.E.2d 945, ¶ 78.

{¶ 38} In *Goldfuss*, a homeowner raised an objection for the first time in his motion for judgment notwithstanding the verdict. The homeowner argued that the jury instructions given at the conclusion of the wrongful-death trial included

the wrong standard of care. 79 Ohio St.3d at 120–121, 679 N.E.2d 1099. The Ohio Supreme Court held that "[p]arties in civil litigation choose their own counsel who, in turn, choose their theories of prosecuting and defending. The parties, through their attorneys, bear responsibility for framing the issues and for putting both the trial court and their opponents on notice of the issues they deem appropriate for jury resolution." Id. at 122. The court went on to note that "[t]he plain error doctrine should never be applied to reverse a civil judgment * * * to allow litigation of issues which could easily have been raised and determined in the initial trial." Id.

{¶ 39} Here, Djukic could easily have raised the applicability of R.C. 4705.15 at trial, but he did not. Had he done so, Friedland would have been put on notice that evidence of an oral agreement would be insufficient to support his requested remedy, and he could have provided evidence of a reasonable fee based on the hours worked on Djukic's case. That evidence was not before the trial court or this court because Djukic failed to raise the applicability of R.C. 4705.15. The issue of the validity of an oral contingent-fee agreement was questioned in the record, but Djukic never cited this statute. He only pointed to the ethical rules in Ohio, which, at the time the agreement was made, did not prohibit an oral agreement.

{¶ 40} It was not plain error for the trial court to send the case to the jury based on a defense Djukic never raised. That decision does not so rattle the foundations of jurisprudence that it would necessitate this court vacating the jury's verdict. Appellant's sixth assignment of error is overruled.

## Manifest Weight

{¶ 41} Djukic argues finally in his seventh assignment of error that the jury's verdict was against the manifest weight of the evidence. It is well established that when some competent, credible evidence exists to support the judgment rendered by the trial court, an appellate court may not overturn that decision unless it is against the manifest weight of the evidence. *Seasons Coal Co., Inc. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 461 N.E.2d 1273. The knowledge a trial court gains through observing the witnesses and the parties in any proceeding (i.e., observing their demeanor, gestures and voice inflections and using these observations in weighing the credibility of the proffered testimony) cannot be conveyed to a reviewing court by a printed record. *In re Satterwhite* (Aug. 23, 2001), Cuyahoga App. No. 77071, 2001 WL 1001017, citing *Trickey v. Trickey* (1952), 158 Ohio St. 9, 13, 47 O.O. 481, 106 N.E.2d 772. In this regard, the reviewing court in such proceedings should be guided by the presumption that the trial court's findings were indeed correct. *Seasons Coal Co.* at 80. As the Ohio Supreme Court has held, "it is for the trial court to resolve

disputes of fact and weigh the testimony and credibility of the witnesses."
*Bechtol v. Bechtol* (1990), 49 Ohio St.3d 21, 550 N.E.2d 178.

{¶ 42} In the present case, the jury heard Friedland testify that Djukic agreed to a 40 percent contingent-fee agreement. Djukic admitted that he knew he would have to pay Friedland something and acknowledged that it may have been 25, 33, or 40 percent of whatever he recovered. Friedland also argued that he would not have taken the case without working out a fee agreement. This is reasonable given Djukic's position when he approached Friedland to represent him. Djukic had a short amount of time to find a new attorney to replace Weiser and had already been turned down by other attorneys.

{¶ 43} Djukic argues that Friedland did not substantially comply with the oral agreement for representation because Friedland failed to object to the jury's punitive-award damages. Friedland presented evidence of his efforts undertaken during Djukic's representation. He interviewed a number of physicians, took depositions, and presented the testimony and written reports of those physicians to the jury. Even if Djukic is correct, Friedland substantially complied with the oral contract. He expended significant efforts to obtain for Djukic an offer for settlement of $35,000 and, after a lengthy trial, a jury verdict of $19,000.

{¶ 44} Djukic also argues that Friedland must demonstrate that he was entitled to his fee under a theory of quantum meruit. Under this theory, "[t]he measure of recovery is the reasonable value of the services rendered, which must be proven by competent credible evidence presented at trial." *Gioffre v. Simakis* (1991), 72 Ohio App.3d 424, 428, 594 N.E.2d 1013. Under this theory of recovery, which was not relied upon at trial, Friedland must demonstrate the amount he is entitled to based on the amount of time spent on the case. Djukic's failure to raise the applicability of R.C. 4705.15 caused the dearth of evidence in the record regarding the amount of time Friedland spent prosecuting Djukic's case. Djukic will not be rewarded for that failure.

{¶ 45} Friedland's theory of recovery was based on an oral agreement to which Djukic failed to appropriately object. At trial Friedland had no need to resort to a quasi-contractual theory of recovery, making a quantum meruit argument irrelevant. This rationale is in agreement with this court's prior determination that "[w]e are loath to decide a case on a theory never advanced or relied on at the trial. As a reviewing court, it is not our duty to second-guess the strategy employed or the theory of the case advanced by the respective parties or their counsel. It is elementary that 'the theory upon which a case is tried in the lower court must generally be adhered to on review.'" *Kraft Constr. Co. v. Cuyahoga Cty. Bd. of Commrs.* (1998), 128 Ohio App.3d 33, 46, 713 N.E.2d 1075, quoting 4 Ohio Jurisprudence 3d (1978) 300–301, Appellate Review, Section 138.

{¶ 46} The jury's award in favor of Friedland was not against the manifest weight of the evidence, and appellant's seventh assignment of error is overruled.

## Conclusion

{¶ 47} The trial court's termination of many of Djukic's claims through summary judgment and directed verdicts was proper. Djukic did not provide the proper support in his expert report for his legal-malpractice claim. Lost punitive damages would not have been appropriately assessed against Friedland. An action for fraud was not the proper way to challenge the authenticity of a document submitted to the court. Further, the trial court did not commit plain error in allowing the case to proceed to the jury when Djukic failed to raise the applicability of the tort contingency-agreement statute. Finally, the jury's verdict was not against the manifest weight of the evidence because Friedland testified to the terms of the agreement and Djukic acknowledged that he knew he would have to pay Friedland something, including as much as 40 percent.

Judgment affirmed.

Rocco, P.J., and Boyle, J., concur.

## APPENDIX

Appellant's seven assignments of error:

I. "The trial court erred in granting summary judgment against Defendant Ivan Djukic on that part of his counterclaim for legal malpractice pertaining to the punitive damages claim in the underlying case against Michelle Turner."

II. "The trial court erred in excluding the expert testimony that would have supported this aspect of the counterclaim."

III. "The trial court erred in directing a verdict against Defendant Djukic on that part of his malpractice counterclaim pertaining to the compensatory damages claim in the underlying case against Turner."

IV. "The trial court erred in granting a directed verdict against Defendant Djukic on is counterclaim for fraud."

V. "The trial court erred in excluding the expert handwriting evidence that would have supported the counterclaim for fraud."

VI. "The trial court erred in allowing Plaintiff Friedland's case to go to the jury without proof of a written and signed contingency fee agreement."

VII. "The verdict in favor of Mr. Friedland was against the manifest weight of the evidence."